**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| KELLY D. MYERS-CLARK, Personal Representative of the ESTATE OF CHRISTOPHER M. CLARK,<br><br>　　　　　　　　　Plaintiff,<br>v.<br><br>FRAHLER ELECTRIC COMPANY, a Foreign Corporation; and YORKE & CURTIS, INC., a Foreign Corporation,<br><br>　　　　　　　　　Defendants. | Case No.  C05-5553 JKA<br><br>**ORDER ON DEFENDANTS' JOINT OBJECTION TO EXPERT TESTIMONY AND MOTION TO EXCLUDE** |

　　　This matter comes before the Court on "Defendants' Joint Objection to Expert Testimony and Motion to Exclude" (Doc.#60).  The court has considered the motion, response, reply, and all materials submitted in support of an in response to said motion as well as the files and records herein.

　　　Plaintiffs' decedent was electrocuted while employed as a maintenance worker at the Bridgewood at Four Seasons (an assisted living facility) in Vancouver, Washington.  Jurisdiction vests in this court pursuant to 28 U.S.C. 1332 based on diversity and the amount in controversy.

　　　Plaintiff's claims against defendant Frahler Electric are premised on allegations of

　　　(1) negligent wiring of the Bridgewood facility, and

　　　(2) negligent preparation of erroneous "as-built" wiring diagrams which plaintiff claims decedent had
　　　　　a right to rely upon.

　　　Plaintiff's claims against Yorke & Curtis are premised on

　　　(1) negligence in selecting Frahler as an electrical subcontractor, and

　　　(2)  negligently failing to inspect the work of Frahler.

Defendants seek to exclude the testimony of plaintiffs proposed experts Lowell Bassett, Ph.D., Werner Spitz, M.D., Daniel Johnson Ph.D., Frank P. Vincenzi, Ph.D., and Yale Barkan. Defendants submit that the testimony offered by each of these individuals does not qualify under Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1995); and *Kumho Tire Co. v. Carmichael*, 526 U.S.137 (1999). Fed. R. Evid. 702 was amended in 2000. As amended the rule reads as follows:

> **Rule 702. Testimony by Experts**. If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Trial courts have discretion in the application of ER702. Both *Daubert* and *Kumho* give the court guidance in exercising that discretion. Counsel have cited a number of nonexclusive factors to be considered, all of which are undergirded by the standard test of "reliability."

### 1. Lowell Bassett, PhD

Dr. Bassett is offered by plaintiff as an economic consultant. His report speaks to the issues of Life Expectancy, Work Life Expectancy, Basic Income, Discounting to Present Value, Consumption Expenses, and Household Expenses

*a. Work/Life Expectancy.* Defendants' challenge to the life expectancy figures opined by Dr. Bassett is premised on the allegation that decedent's smoking habits (cigarettes and marijuana) were not taken into consideration. The life expectancy figures offered by Dr. Bassett are remarkably similar to those of defendants' expert, Dr. Knowles. The issue of decedents alleged smoking and drug use habits are fair matters for cross-examination, but not fatal to Dr. Bassett testifying as an expert on life expectancy issues. The figures utilized are commonly and routinely taken from the Insurance Commissioner's Life Expectancy Tables and that appears to be the source utilized by expert witnesses for both plaintiff and defendants in this case.

*b. Economic Loss/Utilization of Invalid Assumptions.* Defendants challenge the admissibility of Dr. Bassett's testimony regarding the decedent's lost earning capacity for the reason that his IRS Returns for the years 2003, 2004, and 2005 do not support the future wage loss anticipated by Dr. Bassett in computing the economic loss. In Dr. Bassett's report he articulates the basis for his assumption that decedent would have moved to other kinds of employment generating greater income than exhibited on the 2003, 2004, and 2005

tax returns. These assumptions appear to be based on information Dr. Bassett had regarding decedent's earlier training and experience and, though subject to cross-examination, cannot be disregarded as entirely speculative.

*c. Failure to quantify effect of marijuana consumption.* The thrust of defendants' argument appears to be the economic cost of consuming cigarettes and marijuana, and Dr. Bassett's failure to arithmetically include those factors in his economic analysis. The court has reviewed those portions of Dr. Bassett's deposition transcript provided. It is clear that defense counsel has inquired of Dr. Bassett on the economic impact of cigarettes and marijuana use and that the subject may be ripe for cross-examination.

**Defendants' Motion to Exclude the Testimony of Dr. Lowell Bassett on issues set forth in a., b., and c. above is denied.**

**2. Werner Spitz, M.D.** Dr. Spitz is offered by plaintiff as a Forensic Pathologist. He has served as a professor of pathology at Wayne State University Medical School for more than 30 years. He also teaches toxicology at the University of Windsor in Ontario, Canada. He appears to be well published.

*a. Life Expectancy*. Defendants challenge the admissibility of Dr. Spitz opinion regarding decedent's life expectancy as not based on any scientific analysis. As in most cases, the parties are submitting opinions from other "experts" based on life expectancy tables published by government agencies.

Although Dr. Spitz reports that he did not look at government tables when he evaluated this case, he infers familiarity with the tables. Plaintiff's counsel argues in support of Dr. Spitz's opinion of a longer life expectancy, based on the fact that government tables adjust the life expectancy age (for any given age) upward periodically. Inasmuch as decedent was 32 years of age at the time of his death, Dr. Spitz postulates that the current tables will be adjusted upward before decedent would have reached the life expectancy age currently specified for a 32 year old male. This is not "junk" science, because the history of life expectancy tables supports it. It appears to the court that Dr. Spitz substitutes his years of experience as a pathologist for the need to closely rely on the traditional role of the government sponsored life expectancy tables. While many experts (often not medical doctors) may rely on those tables, the court knows of no reason to automatically exclude the testimony of a medical doctor specializing in pathology, who doesn't because he/she may have other reliable sources or experience on which to base their opinion.

*b. Conscious Pain and Suffering:* Plaintiffs wish to illicit an opinion from Dr. Spitz that plaintiff likely experienced 45 to 50 seconds of conscious pain and suffering before losing consciousness. Defendants argue that Dr. Spitz cannot support that conclusion under ER702. The court has reviewed all furnished

excerpts from Dr. Spitz's deposition regarding this issue, and finds his testimony somewhat mercurial. He only speaks of a reasonable medical certainty at P. 76, line 15 when he says, "but I'm talking about a reasonable medical certainty considering that there is a period during which there is an arrhythmia and then they develop ventricular fibrillation." Having read the context in which that response was given, it is impossible for the court to determine to what extent, if any, the comment was made with regard to this particular incident. With regard to the duration of that period of time, the court finds nothing in the deposition that reaches the level of "reasonable medical certainty" with regard to the decedent in this matter.

**Defendants' motion to exclude the testimony of Dr. Werner Spitz is denied as to a. above; is granted as to b. above.**

**3. Daniel Johnson Ph.D.** Plaintiffs offer the opinion testimony of Daniel Johnson on issues of breach of duty and causation. Dr. Johnson is a Certified Professional Ergonomist. He describes the body of knowledge within his expertise as relating to human limitations, capabilities and characteristics as it is related to design. Dr. Johnson has a B.A., M.A. and Ph.D. in Psychology. He has worked in the field of ergonomics since 1967. Defendants challenge his qualification, on the basis that 1) he has no training as an electrician or as an electrical engineer; 2) he has no experience or training with any of the construction trades; 3) no familiarity with standard of care for electricians and general contractors; and 4) lack of familiarity with any standards for labeling circuits or drawing electrical diagrams.

To some extent it appears to the court that Dr. Johnson's testimony will be about assumptions and observations (more in the nature of a fact witness). To the extent he is an expert, his expertise is with regard to the "user" not the "builder" or "electrician." Therefore, the court finds his lack of training as a contractor or a builder to be irrelevant insofar as he is testifying regarding human responses to conditions.

The court next needs to determine to what extent the testimony of an ergonomist might be helpful to the jury's understanding of the facts and the issues of breach of duty and/or causation.

*a. Decedent's view of the "as-built" plans*. At this stage of the proceedings the court understands there to be a dispute as to whether or not the decedent reviewed the "as-built" plans. Assuming that there is evidence to support the contention that he did, it is not inappropriate for Dr. Johnson to make that assumption in formulating any opinion the court allowed. He could not testify, however, as a fact that decedent viewed the "as-built" plans. The foregoing, notwithstanding, the court notes that if the jury were to

conclude that the decedent viewed the "as-built" plans, and that they were erroneous, they would be able to

decide the issues of forseeability and causation without "expert" testimony to the effect that in the "expert's" opinion accurate plans would more probably than not have prevented Mr. Clark's death.

**Defendants' motion to exclude the expert opinion testimony of Daniel Johnson with regard to whether or not decedent viewed the "as-built" plans and that not viewing them caused his electrocution is granted.**

*b. Survey of Workers/warning labels:* Plaintiff submits the testimony of Dr. Johnson resulting from a "descriptive" (as opposed to "experimental" survey of workers). Dr. Johnson appears to have extensive experience designing warning placards for passengers in aircraft, and has utilized the same survey/questionnaire process in determining the appropriate placards or labels to be installed for passenger safety. He has also utilized the same process in evaluating needs for scissor lift and scaffolding manufacturers. Defendants object both to the survey itself, as unscientific, and the nature of the questions utilized in the survey as not factually comparable to the facts in this case. Defendants' argument that those surveyed were not exclusively maintenance workers from assisted living facilities or from the Vancouver, Washington area is not persuasive. The court has difficulty understanding how those two factors would affect the scientific validity of the result one way or the other given the allegations and defenses in this case. The survey results led to Dr. Johnson's opinion as to what, if any, types of warning labels should have been placed on the circuit breakers. If plaintiff's assertion that circuit breakers marked "spare" were actually wired is correct, that raises an issue of appropriate labeling which tips the scales in favor of the court allowing Dr. Johnson to testify with regard to his survey and his resulting opinions regarding proper warning/labels.

**Defendants' motions to exclude the expert opinion testimony of Daniel Johnson with regard to his maintenance worker survey and appropriate warning/labels are denied.**

**4. Frank Vincenzi Ph.D.** Plaintiff offers the expert opinion testimony of Dr. Vincenzi in support of the contention that the amount of marijuana (THC) in decedent's system was relatively small and had little effect on decedent's ability to perform the tasks leading to his electrocution. Defendants object to the testimony of Dr. Vincenzi based on his methodology and further allege that it is derived from facts not in evidence. Plaintiffs respond calling to the court's attention that defendants' experts David Predmore and Anne Marie Gordon both testified as to the improbabilities of determining the degree of impairment in this case using their methodology or the methodology of Dr. Vincenzi. In plaintiff's response to this motion the court is advised of a forthcoming motion in limine with regard to evidence of marijuana use based on the premise that any

opinion with regard to it's effect on the decedent would be speculative.

ORDER
Page - 5

**Pending a determination on the aforementioned motion in limine, the court reserves ruling on the motion to exclude the opinion testimony of Dr. Vincenzi.**

**5. Yale Barkan.** Plaintiffs offer the testimony of Yale Barkan, an Electrical Engineer for 40 years and experience as a forensic consultant for 10 years. Mr. Barkan is offered to render the opinion that decedent could not have known that the incident fixture was not on the same circuit as the adjacent fixture. His opinion appears to be based on the following assumptions: (1) if decedent looked at the "as-built" plans, they erroneously indicated that both the incident fixture and the adjacent fixture were connected and that they were both connected to the same circuit breaker; and (2) decedent could not test whether the single light switch in the room controlled the incident light, because the light bulb was burned out

Defendants seek to exclude the testimony on the basis that it is not factually supported, and that the witness is unaware of a Washington Code provision mandating unswitched emergency lighting.

It would appear to the court that as an Electrical Engineer, Mr. Barkan could testify as an expert to (1) and (2) above, without rendering the opinion that "decedent could not have known that the incident fixture was not on the same circuit as the adjacent fixture. The jury would have sufficient evidence to reach that conclusion should they find (1) and (2) to be accurate. The resulting opinion by Mr. Barkan would not be necessary to assist the trier of fact.

**Defendants' motion to exclude the testimony of Yale Barkan is denied as to (1) and (2) above, and granted as to the conclusion that "plaintiff could not have known that the incident fixture was not on the same circuit as the adjacent fixture."**

Dated this 22nd day of January 2007.

*/s/ J. Kelley Arnold*
United States Magistrate Judge